**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Norfolk Division)**

| | |
|---|---|
| THE RADIANCE FOUNDATION, INC.<br>and RYAN BOMBERGER, individually,<br><br>Plaintiffs/Counterdefendants,<br><br>v.<br><br>NATIONAL ASSOCIATION FOR THE<br>ADVANCEMENT OF COLORED PEOPLE,<br><br>Defendant/Counterclaimant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 2:13-cv-53 (RAJ/LRL)<br>)<br>)<br>)<br>)<br>)<br>) |

## ANSWER AND COUNTERCLAIM

COMES NOW Defendant/Counterclaimant National Association for the Advancement of Colored People ("NAACP"), by counsel, and for its Answer to the Complaint filed in this matter by Plaintiffs/Counterdefendants The Radiance Foundation, Inc. and Ryan Bomberger ("Plaintiffs") states as follows:

## ANSWER

1.      Paragraph 1 of the Complaint is a description of the claims asserted by Plaintiffs in this case, to which no response is required.  To the extent a response is required, NAACP denies the allegations of Paragraph 1 of the Complaint.

2.      NAACP admits that this Court has jurisdiction to hear claims arising out of the federal trademark laws pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337 and § 1338(a).  NAACP admits that this Court has subject matter jurisdiction under 28 U.S.C. § 1367 to hear other claims that are so related to the trademark claims that they form part of the same case or controversy.  NAACP admits that Plaintiffs and NAACP are citizens of different states

and that the amount in controversy exceeds the sum of $75,000.  Except as admitted, the allegations of Paragraph 2 of the Complaint are denied.

3.      NAACP denies the allegations of Paragraph 3 of the Complaint.

4.      NAACP admits that The Radiance Foundation, Inc. is a plaintiff in this matter but is without information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 4 of the Complaint and therefore denies the same.

5.      NAACP admits that Ryan Bomberger is a plaintiff in this matter but is without information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5 of the Complaint and therefore denies the same.

6.      NAACP admits the allegations in Paragraph 6 of the Complaint.

7.      NAACP admits that it maintains chapters in the Commonwealth of Virginia but otherwise denies the allegations of Paragraph 7 of the Complaint.

8.      NAACP states that it is without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint and therefore denies the same.

9.      NAACP states that it is without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint and therefore denies the same.

10.      NAACP admits that The Radiance Foundation, Inc. maintains a website at the URL address www.theradiancefoundation.org.  NAACP states that it is without information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 10 of the Complaint and therefore denies the same.

11.      NAACP states that it is without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint and therefore denies the same.

12.     NAACP states that it is without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint and therefore denies the same.

13.     NAACP admits that Hilary Shelton is Director of its Washington Bureau and its Senior Vice President for Advocacy and Policy, but is without information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 13 of the Complaint and therefore denies the same.

14.     NAACP states that it is without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint and therefore denies the same.

15.     NAACP refers to the entirety of the referenced June 21, 2011, which is the best evidence of its contents.  NAACP otherwise denies the allegations in Paragraph 15 of the Complaint.

16.     NAACP refers to the entirety of the referenced July 6, 2011 article, which is the best evidence of its contents.  NAACP otherwise denies the allegations in Paragraph 16 of the Complaint.

17.     NAACP states that it is without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and therefore denies the same.

18.     NAACP refers to the entirety of the referenced article, which is the best evidence of its contents.  NAACP otherwise denies the allegations of Paragraph 18 of the Complaint.

19.     NAACP refers to the entirety of the referenced article, which is the best evidence of its contents.  NAACP otherwise denies the allegations of Paragraph 19 of the Complaint.

20.     NAACP admits that the NAACP seal appears adjacent to the text of the referenced article.  NAACP otherwise denies the allegations of Paragraph 20 of the Complaint.

21.     NAACP states that it is without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint and therefore denies the same.

22.     NAACP refers to the entirety of the referenced speech as posted on the TooManyAborted.com website, which is the best evidence of its contents.  NAACP otherwise denies the allegations contained in Paragraph 22 of the Complaint.

23.     NAACP states that it is without information sufficient to form a belief as to the truth of the allegations contained in Paragraph 23 of the Complaint and therefore denies the same.

24.     NAACP refers to the entirety of the referenced January 16, 2013 article, which is the best evidence of its contents.  NAACP otherwise denies the allegations of Paragraph 24 of the Complaint.

25.     NAACP refers to the entirety of the referenced January 16, 2013 article, which is the best evidence of its contents.  NAACP otherwise denies the allegations of Paragraph 25 of the Complaint.

26.     NAACP admits the allegations of Paragraph 26 of the Complaint.

27.     NAACP admits the allegations of Paragraph 27 of the Complaint.

28.     NAACP admits the allegations of Paragraph 28 of the Complaint.

29.     NAACP refers to the entirety of the referenced January 29, 2013 letter, which is the best evidence of its contents.  NAACP otherwise denies the allegations of Paragraph 29 of the Complaint.

30.     NAACP refers to the entirety of the referenced January 29, 2013 letter, which is the best evidence of its contents.  NAACP otherwise denies the allegations of Paragraph 30 of the Complaint.

31.     NAACP denies the allegations of Paragraph 31 of the Complaint, including all subparts thereof.

32.     NAACP denies the allegations of Paragraph 32 of the Complaint.

## GENERAL DENIAL

33.     The remaining allegations are a prayer for relief that does not require an admission or denial by NAACP.  Any allegations of the Complaint not hereinabove admitted, denied, or explained are denied, and NAACP specifically denies that Plaintiffs are entitled to any relief whatsoever against NAACP.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred due to lack of subject matter jurisdiction.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' Complaint is barred due to improper venue.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs are barred from seeking any relief against NAACP based on the doctrine of unclean hands.

**WHEREFORE,** NAACP requests that Plaintiffs take nothing by their Complaint and that Defendant be awarded judgment as follows:

A.     That Plaintiffs' Complaint be dismissed with prejudice;  and

  B.  That NAACP be awarded attorneys' fees and costs and such other and further relief as the Court deems just and proper.

## COUNTERCLAIM

   Counterplaintiff, National Association for the Advancement of Colored People ("NAACP") ("Counterplaintiff" or "NAACP "), brings this Counterclaim against The Radiance Foundation, Inc. and Ryan Bomberger, individually ("Counterdefendants"), for trademark infringement, trademark dilution, and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the common law of Virginia. NAACP seeks injunctive relief and damages against Counterdefendants based on their unlawful use of NAACP's famous and well-known marks. In support of its Counterclaim, NAACP alleges the following:

## NATURE OF CASE, JURISDICTION, AND VENUE

  1.  This is an action for trademark infringement, trademark dilution, and unfair competition under the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* (the "Lanham Act"), and the common law of Virginia. NAACP brings this Counterclaim as a result of Counterdefendants' use of NAACP's famous and well-known trademarks in a manner that (1) infringes upon NAACP's valuable rights in its trademarks, (2) dilutes, tarnishes, and disparages NAACP and its trademarks, causing substantial harm to NAACP and its reputation, earned and established over more than one hundred years, as an organization dedicated to fighting for social justice and equality for all Americans, and (3) unlawfully and unjustly enriches Counterdefendants at NAACP's expense. NAACP seeks equitable and monetary relief to remedy the substantial harm it has sustained as a result of Counterdefendants' unlawful acts.

  2.  The Court has jurisdiction over this Counterclaim under 28 U.S.C. §§1331 and 1338, as well as 15 U.S.C. § 1121. The Court also has subject matter jurisdiction under 28

U.S.C. § 1332, as the parties are of diverse citizenship and the amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

3.      This Court has personal jurisdiction over Plaintiffs because they maintain offices, are domiciled, and/or regularly transact business within the Commonwealth of Virginia.

4.      Venue is proper in this district under 28 U.S.C. §1391.

## THE PARTIES

5.       Counterplaintiff NAACP is a non-profit membership corporation chartered under the laws of the State of New York with its principal place of business in Baltimore, Maryland.

6.      Counterdefendant The Radiance Foundation, Inc., upon information and belief, is a non-profit corporation organized and existing under the laws of the State of Georgia with its principal place of business in Virginia Beach, Virginia.

7.      Counterdefendant Ryan Bomberger is an individual and, upon information and belief, is domiciled within the Commonwealth of Virginia.

## FACTS RELEVANT TO ALL COUNTS

### NAACP And Its Famous Marks

8.      Founded in 1909, NAACP is the nation's oldest and largest civil rights organization.  Along with its more than half a million members nationwide, NAACP fights for social justice for all Americans.  Its mission is to advance the cause of equality and justice in all areas of society, and is dedicated to advocating on such core issues as voting rights, economic justice, criminal justice, health and environmental justice, and education.  NAACP's leadership consists of prominent individuals in American society, including lawyers, government officials, clergy, physicians, policymakers, and social advocates.

9.      In recent years, the issues of health justice and equality have become increasingly important and critical for African Americans and other people of color.  NAACP has adopted and implemented a four-tiered health agenda to improving the health and well-being of African American families and families of color.  These four tiers consist of: (1) childhood obesity – advocating changes in policies and programs at the local, state and federal levels and executing an outreach plan to educate African American families and increase awareness of the root causes of childhood obesity; (2) HIV/AIDS – advocating for increased testing, education and policies aimed at stopping the rates of new infections and increasing access to care in communities of color; (3) healthcare system reform – advocating and mobilizing in support of the passage of the health care reform bill for all Americans; and (4) health disparities – assisting in the eradication of racial and ethnic health disparities, identifying social and environmental factors that affect health and wellness in communities of color, and engaging the workforce to increase the representation of people of color in the medical and public health professions.

10.      On the issue of abortion, NAACP has not supported abortion but rather supports a woman's right to choose.  NAACP's decision not to support abortion has been influenced at least in part by the strong religious values and beliefs held by many of those in its leadership, including leading members of the clergy from across the United States.

11.      For over one hundred years, NAACP has used its NAACP trademark to identify its organization and the services it provides to communities of color, and has registered this and other trademarks with the United States Patent and Trademark Office ("USPTO").  These trademarks (hereinafter referred to as the "NAACP Registered Marks") are set forth below:

| Mark | U.S. Registration No. | Registration Date | Goods/Services |
|------|------------------------|-------------------|----------------|
| NAACP | 1,188,182 | 01/26/1982 | Association services, namely, providing |

| | | | legal assistance, technical assistance and other resources to achieve civil rights in education, voting, housing, employment and economic opportunity, in International Class 42. |
| THE CRISIS | 3,052,885 | 01/31/2006 | Magazines in the field of social issues, and posters, in International Class 16 . |
| IMAGE AWARDS | 3,014,745 | 11/15/2005 | Organizing and conducting the presentation of awards recognizing exemplary works, people or projects that promote a positive impression of people of color; educational and entertainment services in the nature of a live show and broadcast of the presentation of awards recognizing exemplary works, people or projects that promote a positive impression of people of color, in International Class 41. |
| ACT-SO and Design  | 1,445,551 | 06/30/1987 | Providing academic scholarships to minority high school students who have demonstrated superior achievements in any of the disciplines of the sciences, humanities or the arts, in International Class 36. |
| ACT-SO (Stylized)  | 1,444,418 | 06/23/1987 | Providing academic scholarships to minority high school students who have demonstrated superior achievements in any of the disciplines of the sciences, humanities or the arts, in International Class 36. |

12.    In addition, since its founding in 1909 and continuing through to the present and without abandonment, NAACP has extensively used in interstate commerce throughout the United States the NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE mark and its seal logo (the "NAACP Seal") to identify its organization and its services to the general public of the United States.  As a result of such use, which has achieved for NAACP's marks widespread recognition among the general public of the United States, NAACP

9

owns valuable common law rights in and to the NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE mark and the NAACP Seal, an image of which is
reproduced below:



The NAACP Registered Marks, the NATIONAL ASSOCIATION FOR THE ADVANCEMENT
OF COLORED PEOPLE mark, and the NAACP Seal are hereinafter collectively referred to as
the "NAACP Marks."

13.     NAACP has promoted and continues to promote its organization, its services and
the NAACP Marks extensively through virtually every available type of digital, broadcast, and
print media, including but not limited to national, regional, and local print publications,
billboards, signage, television, and the Internet.

14.     NAACP also actively promotes its organization, services and the NAACP Marks
through popular and highly-trafficked social networking websites, including FACEBOOK,
TWITTER and LINKEDIN. NAACP's FACEBOOK page has received over a million "likes,"
showing FACEBOOK users' positive feedback in connection with NAACP and its organization
and services.

15.     In addition, NAACP presents annually its Image Awards, the nation's premier
event celebrating the outstanding achievements and performances of people of color in the arts as
well as those individuals or groups who promote social justice. The honorees, presenters and
performers at the have included many of the major celebrities in America as well as international
political figures and dignitaries. Each year, the NAACP Image Awards program is televised

nationally to an audience of millions of viewers.  Each telecast of the NAACP Image Awards prominently displays and features the NAACP Marks.

16.     As a result of NAACP's extensive continuous use and promotion of the NAACP Marks, these trademarks (1) have become well-known and famous, and have acquired secondary meaning, among the general public in the United States, (2) are distinctive to designate NAACP, its organization, and its services from the organizations and services of others, and (3) distinguish and identify NAACP as the source or origin of its organization and services.

17.     NAACP has expended significant resources and investment to establish and build the NAACP Marks as distinctive, well-known and famous marks.  As a result, the general public of the United States recognizes and has come to associate these marks with NAACP and the principles of social justice and equality for which it has fought for over one hundred years.

**Counterdefendants' Unlawful Conduct**

18.     Beginning in or about January 2013, Counterdefendants began posting materials on its websites located at the URLs www.theradiancefoundation.org and www.toomanyaborted.com in support of what Counterdefendants described as an "ad campaign [to] expose[ ] the NAACP's pro-abortion position."  Counterdefendants' "ad campaign" included a webpage that prominently displayed in the title and subheadings the name "The National Association for the Abortion of Colored People."  Immediately below the title and subheadings, the following ad is prominently displayed:



19.     The text of the article displayed on the referenced "The National Association for the Abortion of Colored People" webpage interchangeably uses "NAACP" and "The National Association for the Abortion of Colored People" to refer to NAACP, without any indication that the latter is meant to serve as a satiric reference to NAACP.  Indeed, it is apparent from the article that "The National Association for the Abortion of Colored People" is the full name of the "NAACP" and that "NAACP" is the acronym for that name.  A true and correct copy of the "National Association for the Abortion of Colored People" webpage is attached hereto as Exhibit "A" and incorporated herein by reference..

20.     As a further part of its "ad campaign," Counterdefendants' www.toomanyaborted.com website contains a page entitled "Expose the Lies. Sponsor a Billboard," which provides a visitor to the site with the ability to purchase outdoor signage and bumper stickers to spread the Counterdefendants' ad campaign.  This page contains pricing for various signage options and indicates that the prices quoted "are estimates from CBS Outdoor for

production costs of the signs (including shipping)." It goes on to state that '[t]hese costs DO NOT include leasing the space (or installation which can be included in the cost of the lease)."

21.      Further, the "Expose the Lies. Sponsor a Billboard" webpage states that there is a $750 "fee to license the artwork" for the signs and, for an additional fee of $750, Counterdefendants will create a website with its own URL, customized based on the customer's state of residence, that will display "thorough research [presumably generated and provided by the Counterdefendants] that conveys abortion's impact on your state." There is also on this page an online contract form that a customer can complete online and thereby enter into a commercial transaction with Counterdefendants to purchase the signage and related services. A true and correct copy of the "Expose the Lies. Sponsor a Billboard" webpage is attached hereto as Exhibit "B" and incorporated herein by reference.

22.      In addition to the foregoing, Counterdefendants have used the NAACP Marks, including the registered NAACP mark and the NAACP Seal, in conjunction with the name "The National Association for the Abortion of Colored People," in Internet postings and in social media websites, including FACEBOOK, without any reference that such uses are or were intended to be "satiric references" to NAACP. True and correct copies of examples of such use are attached hereto as Exhibits "C" and "D" and incorporated herein by reference..

23.      Counterdefendants' use of the NAACP Marks, and the name "The National Association for the Abortion of Colored People," as detailed above, is without the authorization or permission of NAACP and is likely to cause confusion among members of the general public in that they are likely to believe that NAACP has sponsored or approved of the postings made by Counterdefendants and advertisements displayed on their websites and thereby attribute the views expressed in such postings to NAACP.

24.     Counterdefendants' unauthorized use of the NAACP Marks, together with the name "The National Association for the Abortion of Colored People," is likely to tarnish and disparage NAACP and thereby damage its reputation among members of the general public of the United States, particularly African Americans and other people of color, by falsely indicating or suggesting that NAACP is "pro-abortion" when in fact it is not.

25.     Counterdefendants' unauthorized use of the NAACP Marks, together with the name "The National Association for the Abortion of Colored People," has damaged and irreparably injured and, if permitted to continue, will further damage and irreparably injure NAACP and the NAACP Marks.

26.     Counterdefendants' unauthorized use of the NAACP marks, together with the name "The National Association for the Abortion of Colored People," has irreparably injured, and, if permitted to persist, will continue to irreparably injure the public, who has an interest in being free from confusion.

## Count I
### (Federal Trademark Infringement Under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1))

27.     NAACP repeats the allegations of paragraphs 1 through 26 above as if fully set forth herein.

28.     The NAACP mark (U.S. Trademark Registration No. 1,188,182 ) is a valid and subsisting federally registered trademark.  By virtue of this registration, the registered NAACP mark is entitled to protection under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*

29.     Counterdefendants' use of the registered NAACP mark is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Counterdefendants' services in that the public is likely to believe that the services provided by Counterdefendants are

provided by, sponsored by, licensed by, affiliated, or associated with, or in some other way

legitimately connected to NAACP or its services under the registered NAACP mark, in violation

of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

30.    NAACP has been damaged by the aforementioned acts in an amount to be

determined at trial.  Counterdefendants' use of the registered NAACP mark was undertaken by

Counterdefendants intentionally, maliciously, and in bad faith.  Therefore, NAACP is entitled to

recover from Counterdefendants, in additional to actual damages, punitive damages and

attorneys' fees.

31.    In addition, Counterdefendants' conduct, if it continues, will result in irreparable

harm to NAACP and, specifically, to the goodwill and reputation associated with the registered

NAACP mark, unless such conduct is enjoined.

**Count II**
**(Trademark Infringement, False Designation of Origin, and Unfair Competition**
**Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))**

32.    NAACP repeats the allegations of paragraphs 1 through 31 above as if fully set

forth herein.

33.    The NAACP Marks are valid, protectable, and distinctive.

34.    Counterdefendants' actions, as described above, are likely to cause confusion,

mistake, or deception as to origin, sponsorship, or approval of Counterdefendants and their

services in that members of the public are likely to believe that the services provided by

Counterdefendants are provided by, sponsored by, licensed by, affiliated, or associated with, or

in some other way legitimately connected to NAACP or its services under the NAACP Marks,

and thus constitute trademark infringement, false designation or origin, and unfair competition in

violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

35.     NAACP has been damaged by the aforementioned acts in an amount to be determined at trial.  Counterdefendants' use of the NAACP Marks was undertaken by Counterdefendants intentionally, maliciously, and in bad faith.  Therefore, NAACP is entitled to recover, in additional to actual damages, punitive damages and attorneys' fees.

36.     In addition, Counterdefendants' conduct, if it continues, will result in irreparable harm to NAACP and, specifically, to the goodwill and reputation associated with the NAACP Marks, unless such conduct is enjoined.

### Count III
### (Trademark Dilution Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c))

37.     NAACP repeats the allegations of paragraphs 1 through 36 above as if fully set forth herein.

38.     The NAACP Marks are famous, as that term is used in 15 U.S.C. § 1125(c), and was famous before Counterdefendants' first use of the NAACP Marks, based on, among other things, the inherent distinctiveness and federal registration of the Registered NAACP Marks and the extensive nationwide use, advertising, promotion and recognition of the NAACP Marks.

39.     Counterdefendants' actions, as described above, are likely to dilute the distinctive quality of the NAACP Marks by blurring and tarnishment in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), as amended by the Trademark Dilution Revision Act of 2006.

40.     NAACP has been damaged by the aforementioned acts in an amount to be determined at trial.  Counterdefendants' use of the NAACP Marks was undertaken by Counterdefendants intentionally, maliciously, and in bad faith.  Therefore, NAACP is entitled to recover, in additional to actual damages, punitive damages and attorneys' fees.

41.     In addition, Counterdefendants' conduct, if it continues, will result in irreparable

harm to NAACP and, specifically, to the goodwill and reputation associated with the NAACP

Marks, unless such conduct is enjoined.

**Count IV**
**(Common Law Trademark Infringement and Unfair Competition Under Virginia Law)**

42.     NAACP repeats the allegations of paragraphs 1 through 41 above as if fully set

forth herein.

43.     Counterdefendants' actions, as described above, are likely to cause confusion,

mistake, or deception as to origin, sponsorship, or approval of Counterdefendants and their

services in that members of the public are likely to believe that the services provided by

Counterdefendants are provided by, sponsored by, licensed by, affiliated, or associated with, or

in some other way legitimately connected to NAACP or its services under the NAACP Marks,

and thus constitute infringement of NAACP's proprietary rights in the NAACP Marks,

misappropriation of NAACP's goodwill and reputation in the NAACP Marks, and unfair

competition under Virginia common law.

**PRAYER FOR RELIEF**

**WHEREFORE**, NAACP respectfully requests that the Court enter judgment against

Counterdefendants and each of them, and award:

(a)     Under 15 U.S.C. § 1116, Counterdefendants and their agents, representatives,

servants, employees, attorneys, officers, directors, shareholders, licensees, affiliates, joint

venturers, parents, subsidiaries, related corporations, and others in privity and acting in concert

with them be permanently enjoined from:

(i)     Using the NAACP Marks and any other mark containing or consisting, in

whole or in part, of the terms "NAACP," "The National Association for the Abortion of

17

Colored People," and any other mark confusingly similar to or colorable imitation of the

NAACP Marks, including, in the advertising, offering for sale, and/or sale of products or

services that may reasonably be encompassed by the NAACP Marks or which may

constitute a natural zone of expansion for NAACP;

(ii)     Using any service mark, trademark, trade name, trade dress, word, domain

name, number, abbreviation, design, color, arrangement, collocation, or any combination

thereof, which would imitate, resemble, or suggest the NAACP Marks;

(iii)    Otherwise infringing the NAACP Marks;

(iv)    Unfairly competing with NAACP or otherwise injuring its business

reputation or goodwill in any manner;

(v)     Publishing any telephone, directory, or Internet listing using the NAACP

Marks and any other mark containing the terms "NAACP" or "The National Association

for the Abortion of Colored People" and any other mark confusingly similar to or

colorable imitation of the NAACP Marks, in the advertising, offering for sale, and/or sale

of goods or services that may reasonably be encompassed by the NAACP Marks, or

which may constitute a natural zone of expansion for NAACP;

(vi)    Using or registering any domain name which is confusingly similar to the

NAACP Marks in advertising, offering for sale, and/or sale of a domain name

registration, or any other goods or services that may reasonably be encompassed by the

NAACP Marks, or which may constitute a natural zone of expansion for NAACP;

(b)     Under 15 U.S.C. § 1118, Counterdefendants be directed to deliver up for

destruction all goods, advertisements, labels, signs, prints, packages, wrappers, receptacles,

computer memory, data, computer programs, software, or any other media, and all other

18

materials in its possession or under its control bearing the NAACP Marks or any other mark

containing the terms "NAACP" or "The National Association for the Abortion of Colored

People," or any reproduction, counterfeit, copy or colorable imitation of the NAACP Marks, and

all plates, molds, matrices, and other means of making or duplicating the same;

(c)      Under 15 U.S.C. § 1117, Counterdefendants account and pay to NAACP damages

in an amount sufficient to compensate it fairly for the injury it sustained, plus all profits that are

attributable to Counterdefendants' sale of goods and services under or in connection with the

NAACP Marks and/or the name "The National Association for the Abortion of Colored

People,", and further that the amount of the monetary award be trebled in view of the willful and

deliberate nature of Counterdefendants' unlawful conduct;

(d)      Under 15 U.S.C. § 1117, Counterdefendants be ordered to pay NAACP its

attorneys' fees and costs;

and

(e)      Any further relief as this Court may deem equitable and proper.


Dated: April 8, 2013                        Respectfully submitted,


                                 _____/s/ *David G. Barger*_____
                                 David G. Barger
                                 VSB No. 21652
                                 GREENBERG TRAURIG, LLP
                                 1750 Tysons Blvd., Suite 1200
                                 McLean, Virginia  22102
                                 Telephone: (703) 749-1300
                                 Facsimile: (703) 749-1301
                                 bargerd@gtlaw.com

Johnine P. Barnes (subject to *pro hac vice* admission)
Steven J. Wadyka, Jr. (subject to *pro hac vice* admission)
GREENBERG TRAURIG, LLP
2101 L Street, N.W., Suite 1000
Washington, D.C.  20037
Telephone:  (202) 331-3100
Facsimile:  (202) 261-0135
wadykas@gtlaw.com

Ernest L. Greer (subject to *pro hac vice* admission)
GREENBERG TRAURIG, LLP
Terminus 200
3333 Piedmont Road, N.E., Suite 2500
Atlanta, Georgia  30305
Telephone:  (678) 553-2402
Facsimile:  (678) 553-2212
greere@gtlaw.com

*Counsel for Defendant/Counterplaintiff*
*National Association for the Advancement of*
*Colored People*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2013, the foregoing Answer and Counterclaim was filed with the Clerk of the Court using the CM/ECF filing system and that service will thereby be accomplished on:

> Charles M. Allen, Esq.
> GOODMAN, ALLEN & FILETTI, PLLC
> 4501 Highwoods Parkway
> Suite 201
> Glen Allen, VA  23060
> Telephone:  (804) 346-0600
> Facsimile: (804) 346-5954
> callen@goodmanallen.com
>
> *Attorney for Plaintiffs The Radiance Foundation, Inc.*
> *and Ryan Bomberger*

                              /s/ *David G. Barger*
                              _____
                              David G. Barger
                              VSB No. 21652
                              Greenberg Traurig, LLP
                              1750 Tysons Boulevard, Suite 1200
                              McLean, Virginia  22102
                              Telephone:  (703) 749-1300
                              Facsimile: (703) 749-1301
                              bargerd@gtlaw.com

*WDC 372789956v1*