IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| THE RADIANCE FOUNDATION, INC. and **RYAN BOMBERGER,** individually, )<br><br>Plaintiffs/Counterdefendants, )<br><br>v. )<br><br>NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, )<br><br>Defendant/Counterplaintiff. ) | Case No. 2:13-cv-53 (RAJ/LRL) |

**PLAINTIFFS/COUNTER DEFENDANTS THE RADIANCE FOUNDATION, INC.'S AND RYAN BOMBERGER' S OPPOSITION TO DEFENDANT/COUNTERCLAIMANT NATIONAL ASSOCIATION OF THE ADVANCEMENT OF COLORED PEOPLE'S MOTION *IN LIMINE* TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF TRACY TUTEN, Ph. D**

Plaintiffs and Counter Defendants The Radiance Foundation and Ryan Bomberger (herein collectively "Radiance"), by counsel, for their opposition to Defendant and Counterclaimant National Association for the Advancement of Colored People's Motion *in Limine* to Exclude the Expert Report and Testimony of Tracy Tuten, Ph.D. state as follows:

Introduction

Defendant and Counterclaimant National Association for the Advancement of Colored People (hereafter "NAACP") moves to exclude the expert testimony of Dr. Tracy Tuten, a Professor of Marketing at East Carolina University who has extensive training and work experience in the design, execution and analysis of consumer surveys. Additionally, Dr. Tuten has written extensively about web-based consumer surveys and has performed scientific research

1

on consumer surveys. Notwithstanding these qualifications, the NAACP seeks to exclude Dr. Tuten's testimony because:

1) "she has virtually no experience in designing or conducting consumer surveys *for trademark litigation*";

2) "she has published no books or articles and given no speeches or presentation on the methodology for designing and executing consumer surveys *for trademark litigation*";

3) [s]he is not a member of any professional associations consisting of *trademark law* practitioners or *trademark litigation experts*", and;

4) [s]he has never taken any courses or attended seminars of symposiums on the methodology for designing and executing consumer surveys *for trademark litigation,* nor has any of her prior educational or work experience involved such issues [i.e. *trademark litigation related surveys*]"

Defendant/CounterPlaintiff National Association for the Advancement of Colored People's Memorandum of Law in Support of Its Motion *in Limine* to Exclude Expert Report and Testimony of Tracy Tuten, Ph.D.(hereafter, "NAACP Memo in Support"), pp. 2-3.

  In short, the NAACP seeks to disqualify Dr. Tuten, notwithstanding her substantial academic training, professional experience and demonstrated expertise in consumer surveys (particularly web-based consumer surveys), because only a small portion of her experience and training involves consumer surveys done *for trademark litigation*.

  The NAACP offers no support for its implicit assumption that the science pertaining to consumer surveys (in general) is distinct and different from the science pertaining to consumer surveys done for trademark litigation. Indeed, neither Fed. R. Evid. 702 nor any case authority requires that the "scientific, technical or other specialized knowledge" that the proffered expert has must have been acquired in the context of litigation in order for the expert to be qualified to testify.

2

Dr. Tuten is qualified as an expert in consumer surveys, particularly web-based surveys, including the design, execution and analysis of such surveys. The specialized expertise she has is helpful to the trier of fact because whether the survey done by the NAACP's expert is reliable and valid, such that it reasonably permits the conclusions that the NAACP's expert wishes to draw from it, is an issue in this case. Further, she has reached her conclusions by a reliable scientific method, specifically, by comparing the reported characteristics of the proffered survey with the science devoted to consumer surveys to determine if it is reliable and valid. Accordingly, the court should admit her testimony.

**A. Dr. Tuten Is Qualified to Provide the Expert Testimony Proffered.**

A review of Dr. Tuten's curriculum vitae[1] demonstrates her substantial qualifications for providing opinion testimony concerning the methodology employed in the survey conducted by the NAACP's expert witness and the impact of that methodology on the reliability and validity of it, and consequently, on the opinions that he seeks to draw from it. First, she has substantial education in consumer surveys, including an undergraduate degree in business administration, with a concentration in marketing, an MBA, and a Ph.D. in Business Administration. CV, p. 1. Second, she has been a faculty member at four undergraduate institutions, including Randolph-Macon College, Virginia Commonwealth University, Longwood University and East Carolina University teaching, among other things, courses in marketing research. CV, pp. 15-16.

Her educational training and her teaching experience are further detailed in her Declaration submitted with this memorandum. (Attached hereto as Exhibit A.) In short, survey methods and statistical analysis were substantive areas studied in her doctoral program. Declaration of Tracy Tuten (hereafter "Tuten Declaration"), ¶ 2. And the marketing research

---

[1] Dr. Tuten's expert witness report and curriculum vitae are attached as Exhibit A to the NAACP's Memo in Support, (Dkt # 49-1) and these were timely provided to the NAACP under Rule 26(a)(2). Citations to her curriculum vitae are noted here as "CV, p. x"

courses she teaches (and has taught) include consumer surveys, including the design, execution and analysis of these. Tuten Declaration, ¶ 3.

Dr. Tuten's qualifications to render testimony concerning consumer survey methodology were not achieved only in academia. On the contrary, she has substantial work experience as a survey methodologist. Thus, her curriculum vitae reflects that she was employed for a year as a Senior Survey Methodologist with Royall and Company, was a guest scientist for several summers at the Center for Survey Research and Methodology in Mannheim Germany, and served as a Senior Research Associate in the Survey and Evaluation Research Lab at Virginia Commonwealth University. CV, p. 16-17. At Royall, her curriculum vitae notes that she "[d]eveloped survey instruments", "designed surveys", "analyzed data" and "developed reports". CV, p. 17. As a Fulbright Senior Specialist at the Argentine University of Business, she "[o]ffered [a] faculty development seminar on web-survey marketing research methods". *Id.* Her research topics in Germany included "response behaviors and context effects in web-based surveys, and mode preferences among survey participants." *Id.*

Dr. Tuten's Declaration further explains the work assignments reflected in her curriculum vitae. Specifically, she relates that as a survey methodologist she would identify relevant survey populations, choose the sampling frame for the population, choose the sampling method and draw the sample, as well as analyzing the data obtained. Tuten Declaration, ¶ 5.

Dr. Tuten's expertise in consumer survey methodology is further underscored by the plethora of publications she has authored or co-authored on that subject. While all of her publications, including journal articles, books and book chapters, and papers and presentations are listed in her curriculum vitae, CV pp. 1-15, those with particular applicability to consumer

4

survey methodology, a total of 29, have been identified by Dr. Tuten in her Declaration. Tuten Declaration, ¶ 7.

Many of her published articles reflect research work she has conducted. As she details in her Declaration, these include research on

> use of web-based data collection modes including whether mode effects exist (i.e., whether a survey conducted online rather than by paper or telephone may systematically differ in results due to no other reason but the online mode itself), how non-response bias can be minimized in online surveys, the use of incentives on response rates and data quality, the effects of reminders on data quality, and the use of banner ads for participant recruitment.

*Id.* Virtually all of her publications have been peer-reviewed. *Id.* Her scholarly publications are particularly significant in this Court's assessment of Dr. Tuten's qualifications because

> submission to the scrutiny of the scientific community is a component of "good science," in part because it increases the likelihood that substantive flaws in methodology will be detected. The fact of publication (or lack thereof) in a peer reviewed journal thus will be a relevant, though not dispositive, consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* 508 U.S. 579, 593-94 (1993) (citations omitted). Just as significantly, her writings address some of the particular methodological characteristics of the NAACP proffered survey that Dr. Tuten has analyzed and evaluated to form her opinions.

Dr. Tuten also has experience in trademark litigation surveys, albeit limited experience. The four matters where she provided expert witness services in relation to trademark infringement-related consumer surveys are identified at page 25 of her curriculum vitae. In one matter she designed and executed a survey to assess likelihood of confusion. In another she assisted in the design and execution of such a survey, and in a third matter she reviewed the methodology and the results of the opposing expert's survey. CV, p. 25. While the matters upon which she was retained are few in number, they nevertheless underscore that she possesses

5

"knowledge, skill, experience, training, or education, which will be of "help to the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702. More importantly, they provide Dr. Tuten an adequate basis upon which she is able to conclude that the scientific principles that apply to consumer surveys done for litigation are not *sui generis*. On the contrary, "the same principles and best practices apply regardless of the scientific inquiry at hand." Tuten Declaration, ¶ 10.

Although the NAACP acknowledges that Dr. Tuten is proffered by Radiance "to critique the consumer survey conducted by the NAACP's expert, Henry D. Ostberg, Ph.D." they submit no evidence which demonstrates that Dr. Tuten lacks the necessary qualifications to perform that task (and render appropriate testimony). NAACP Memo in Support, p.1. Instead, they present deposition testimony in which Dr. Tuten was questioned about whether she had a law degree, had taken any trademark law courses or was a member of the International Trademark Association or the American Intellectual Property Law Association.[2] NAACP Memo in Support, Exh. B, pp. 20-21. But they neglect to offer testimony about her education in marketing, business management and most importantly, marketing research or about her membership in the American Marketing Association, the Academy of Marketing Science. Qualifying each question asked during Dr. Tuten's deposition about her experience with the prepositional phrase, "for trademark law" or "in trademark litigation" may have been clever, but it does not demonstrate that she is unqualified as an expert in consumer surveys.[3] *See Belk, Inc. v. Meyer Corp.,* 679

---

[2] Contrary to the NAACP's assertions, Dr. Tuten is not proffered as an expert in trademark law or to render an opinion about whether there is a likelihood of confusion or dilution presented in the case. See NAACP Memo in Support, p. 6. She is proffered as an expert in consumer surveys who has reviewed the reported methodology of the survey and is prepared to render opinions about whether the survey proffered by the NAACP is reliable and valid such that Dr. Ostberg can reasonably render his opinions from it. *See,* NAACP Memo in Support, Exh. A.

[3] While the NAACP's counsel asked Dr. Tuten a plethora of questions about her experience with regard to "consumer surveys in [or for] trademark litigation", he never asked about her experience in consumer surveys and consumer survey methodology in general. The questions qualification renders them unhelpful in assessing whether

F.3d 146, 162 (4th Cir. 2012) ("Contrary to Belk's assertions, the fact that Didow had not previously conducted, specifically, trade dress or trademark surveys does not mean he was not qualified as an expert in this case. Belk provides no support for its argument that consumer survey research in trade dress litigation is *sui generis* such that an expert's lack of experience in designing these specific surveys necessarily disqualifies him from giving an expert opinion.")

Dr. Tuten's undergraduate and graduate education, her experience in academia, her work experience as a survey methodologist and the multitude of peer-reviewed publications concerning consumer surveys all attest to her special expertise in consumer surveys and the methodology for designing, executing and analyzing these. There is no logical reason to conclude that the fact that most of this education, training and experience is unrelated to consumer surveys conducted in order that their results be used in litigation means that she is unqualified to render opinions about the survey conducted in this action. On the contrary, the Federal Rules of Evidence contemplate that the expert will perform the task as experts "in the particular field" ordinarily would. *See* Fed. R. Evid. 703.

Dr. Tuten is qualified as an expert in consumer surveys and the methodology for them. The Court should not exclude her on this basis.

**B. Dr. Tuten's Opinions Are Admissible Expert Opinion Under Rule 703 and *Daubert* and its progeny.**

In order to reach her opinions, Dr. Tuten "relied upon [her] expertise and experience in survey methodology as well as the specific guidelines detailed in the "Reference Guide on Survey Research" by Shari Seidman Diamond." NAACP Memo in Support, Exh. A., Expert Report of Tracy Tuten, Ph.D., ¶11. Specifically, in accordance with the Diamond article she examined the Ostberg report of the survey to determine whether the "1) purpose and design, 2)

---

she has "scientific, technical, or other specialized knowledge" in the area of consumer surveys, i.e., the area in which she is proffered.

population and sampling, 3) survey questions and structure, 4) interviewers, 5) data entry and grouping of responses, and 6) disclosure and reporting" were such that the survey was reliable and valid. NAACP Memo in Support, Exh. A., Expert report of Tracy Tuten, Ph.D., ¶ 12. This methodology, i.e. assessing the survey's characteristics and measuring it against what the scientific research in the field of consumer surveys reports about whether such characteristics permit valid and reliable conclusions, is a scientifically valid one, and therefore, Dr. Tuten's opinions are admissible. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 594 (1993).

The NAACP alleges a variety of complaints that it asserts demonstrate the unreliability of Dr. Tuten's opinions. First, it complains that she excludes sponsorship and approval as components of a "likelihood of confusion" assessment. Her deposition testimony refutes that allegation and demonstrates that she included "affiliation or sponsorship" as a component of the "likelihood of confusion" issue in this case:

> Q  Is it your understanding that likelihood of confusion is limited to confusion as to source?
> A  Not limited, but that that would be the issue here or one of the issues here.
> Q  Okay. What about confusion as to affiliation or sponsorship? Wouldn't that also be a core issue?
> A  Which would be part of a source issue.
> Q  I'm sorry. Part of a source issue? What do you mean by that?
> A  You -- you said affiliation, right?
> Q  Affiliation or sponsorship. Correct?
> A  So that would go to source as well.
> Q  Okay. So confusion as to source is the same as confusion as to affiliation or sponsorship?
> A  They would be related issues.
> Q  Okay. What about confusion as to whether one party required permission or approval?
> A  That would also be related.
> Q  Related to what?
> A  The source.
> Q  To whether there's confusion as to source?
> A  Yes.

NAACP Memo in Support, Exh. B., p. 100:9-101:8.

Next, the NAACP complains that she omits from the report of her opinions regarding whether the survey supports Dr. Ostberg's opinions on tarnishment and dilution the words "likelihood of" thus, demonstrating that she has used the wrong legal standard to assess dilution. First, Dr. Tuten testified that she understood the correct standard. NAACP Memo in Support, Exh. B. p. 110:11-12 ("I believe that it needs to show that there is a likelihood to tarnish.") Second, and more importantly, in her report Dr. Tuten is responding directly to the conclusions that Dr. Ostberg drew from the errant survey. Thus, he reports, "there is a net dilution by tarnishment of NAACP's name and reputation of 37%." Extract of Dr. Ostberg's "Survey to Determine Reactions to the Term, "National Association for the Abortion of Colored People", p. 15 (Attached hereto as Exhibit B).

The NAACP further complains that Dr. Tuten faults the survey because it was conducted with a non-probability sample (i.e. a sample that is not drawn by random methods) and that surveys based on non-probability samples are routinely admitted in trademark litigation matters. That the use of a non-probability sample makes it impossible to make an unbiased estimate of the population characteristics is a scientific principle of consumer surveys that the NAACP's expert, Dr. Ostberg knows and acknowledges. Extract of Dr. Ostberg's Deposition, p. 120:7-12. (Attached hereto as Exhibit C) ("Q. And these – this non – you would agree with me that a non-probability sample can't be used to make an unbiased estimate of the population characteristics, correct? A. Not a pure statistical. Based upon the rules of statistics, correct.") More significantly, the fact that surveys demonstrating acknowledged flaws are admissible in evidence does not demonstrate that expert opinion criticizing the survey for having those flaws is impermissible and inadmissible. On the contrary, the hurdle for admissibility for surveys is set

9

extremely low precisely because cross-examination and rebuttal evidence can often demonstrate the impact of the flaws.

> "While there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare." *AHP Subsidiary Holding Co. v. Stuart Hale Co., 1 F.3d 611, 618 (7th Cir. 1993)*. Usually, objections based on flaws in the survey's methodology are properly addressed by the trier of fact.

*PBM Products, LLC v. Mead Johnson & Co.,* 639 F.3d 111, 123 (4th Cir. 2011); *see also* 6 McCarthy, *Trademarks and Unfair Competition* § 32:170 (4th Ed. 2012) ("The majority rule is that while technical deficiencies can reduce a survey's weight, they will not prevent the survey from being admitted into evidence.") ; *but compare The Learning Network, Inc. v. Discovery Communications, Inc.,* 153 F.Supp.2d 785, 789 (D. Md. 2001) (Granting a motion to exclude the testimony and report of Dr. Henry Ostberg because the "asserted defects" in the survey were "so great as to warrant exclusion rather than grist for the mill of cross-examination, rebuttal evidence, and jury evaluation".)

The NAACP makes a variety of additional complaints including that Dr. Tuten's criticism that Dr. Ostberg failed to use a control group is invalid because he used control questions, that her opinion that he double counted respondents in some of his findings is incorrect because he has an explanation for it and similarly, that he can explain that he has not inflated certain findings as she claims. None of these complaints renders the methodology by which Dr. Ostberg reaches her conclusions unreliable. As the *Daubert* Court explained:

> The inquiry envisioned by *Rule 702* is, we emphasize, a flexible one. Its overarching subject is scientific validity – and thus the evidentiary relevance and reliability -- of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, ***not on the conclusions that they generate.***

*Daubert v. Merrell Dow Pharmaceuticals,* 508 U.S. 579, 594-954 (1993) (footnote omitted) (emphasis added).

None of the authorities cited by the NAACP support exclusion of the proffered testimony. The methodology employed by Dr. Tuten is to assess and evaluate the reported methodology of the Ostberg survey against the relevant scientific evidence demonstrating the characteristics which make a consumer survey valid and reliable. This stands in stark contrast to *Mitchell v. Gencorp Inc.,* 165 F.2d 778 (10th Cir. 1999). In that case, the expert was proffered to provide the opinion that exposure to benzene had caused the plaintiff's leukemia. *Id.* at 799. However, the expert had no evidence to show that the plaintiff had been exposed to benzene as he "never visited the flammable room and conducted no air tests to demonstrate Mitchell's level of exposure to the chemicals." And he "did not attempt to recreate the level of exposure through computer modeling." *Id.* In short, the expert simply had no "supporting scientific data" for his conclusions. *Id.* at 781.

Here, however, Dr. Tuten has the methodology information reported by Dr. Ostberg about his survey. Should she be misinformed about certain aspects he has reported – either because he has reported them incorrectly or she has misinterpreted them, this deviation can be adequately explored by cross-examination.

In similar fashion, *PBM Products, LLC v. Mead Johnson & Co.,* 639 F.3d 111 (4th Cir. 2011), simply reiterates the requirement of Rule 702 that the opinions proffered must be the product of "reliable principles and methods". *Id.* at 123. As noted herein Dr. Tuten's methods are reliable and, therefore, her testimony is admissible.

Dr. Tuten's report demonstrates that she arrives at her opinions by an appropriate and reliable method: she reviewed the characteristics of the Ostberg survey and analyzed it in

relation to the scientific principles she has learned and knows from her research, education and experience in the methodology of consumer surveys, particularly web-based consumer surveys. The NAACP is free to challenge her conclusions – whether on the basis that she has misinterpreted what Dr. Ostberg has reported or otherwise – by cross-examination or rebuttal evidence. But the fact that it disagrees with her conclusions does not demonstrate the unreliability of her methods.

## CONCLUSION

Dr. Tuten is eminently qualified as an expert in the area of consumer surveys. Her education, work experience, published works and her teaching experience all testify to that fact. The methodology she employed to reach her opinions – reviewing the reported methodology of the Ostberg survey and analyzing it in related to the science pertaining to consumer surveys – is a reliable one. Accordingly, this Court should overrule the Motion *in Limine* and permit her to testify.

**Respectfully submitted,**

**THE RADIANCE FOUNDATION, INC.**
**RYAN BOMBERGER**

_____/s/_____
Charles M. Allen (VA Bar No. 30183)
Email: callen@goodmanallen.com
GOODMAN, ALLEN & FILETTI, PLLC
4501 Highwoods Parkway, Suite 210
Glen Allen, Virginia 23060
Phone: (804) 346-0600
Fax: (804) 346-5954
*Counsel for The Radiance Foundation, Inc., and Ryan Bomberger*

## CERTIFICATE OF SERVICE

I certify that on the 20th day of November 2013, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will then send a notification of such filing to the following:

| | |
|---|---|
| David G. Barger | Johnine P. Barnes, Esq. |
| VA Bar No. 21652 | Steven J. Wadyka, Jr. Esq. |
| Greenberg Traurig, LLP | Greenberg Traurig, LLP |
| 1750 Tysons Blvd., Suite 1200 | 2101 L. Street, NW, Suite 1000 |
| McLean, Virginia 22102 | Washington, DC 20037 |
| bargerd@gtlaw.com | barnesj@gtlaw.com |
| | wadykas@gtlaw.com |

*Attorneys for Defendant National Association for the Advancement of Colored People*

                                          _____/s/_____
Charles M. Allen (VA Bar No. 30183)
Email: callen@goodmanallen.com
GOODMAN, ALLEN & FILETTI, PLLC
4501 Highwoods Parkway, Suite 210
Glen Allen, Virginia 23060
Phone: (804) 346-0600
Fax: (804) 346-5954

*Counsel for The Radiance Foundation, Inc., and Ryan Bomberger*